UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 17-CV-10232-JCB

|  |  |
|---|---|
| JUDITH BARRIGAS, | ) |
| Plaintiff | ) |
| v. | ) |
| UNITED STATES OF AMERICA, THE HOWARD STERN PRODUCTION COMPANY, HOWARD STERN | ) |
| Defendants | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS HOWARD STERN PRODUCTION COMPANY AND HOWARD STERN'S MOTION TO DISMISS**

NOW COMES the plaintiff in the above-entitled matter and respectfully opposes the defendants The Howard Stern Production Company and Howard Stern (hereinafter collectively referred to as "Stern") Motion to Dismiss. As grounds for this motion, the plaintiff states that her Amended Complaint is sufficient to properly give Stern fair notice of the plaintiff's claims of interference with her rights of privacy under M.G.L. Chapter 214, § 1B, of Intentional Infliction of Emotional Distress, and of Negligence. The plaintiff further states.as follows in support of her Opposition:

**I.     INTRODUCTION/PROCEDURAL POSTURE**

Plaintiff Judith Barrigas has brought this action against both the United States and Stern. As against Stern, the plaintiff has brought claims for Invasion of Privacy pursuant to M.G.L.

Chapter 214, § 1B, Negligence, Intentional Infliction of Emotional Distress, and unlawful disclosure of tax information in violation of 26 U.S.C. § 7431 and 26 U.S.C. § 6103[1].

## II.     STATEMENT OF FACTS[2]

Plaintiff Judith Barrigas is a 54 year old woman residing in Sandwich, Massachusetts. Ms. Barrigas is married to Acacio Barrigas, a long-time veteran of the United States Armed Forces. Ms. Barrigas and her husband have two adult children. Ms. Barrigas has had a long career in the Human Resources management field. As of May 19, 2015 and continuing through present day, Ms. Barrigas resided with her husband at their home in Sandwich, Massachusetts. Barrigas affidavit ¶ 1-4.

On May 19, 2015, Ms. Barrigas called an IRS service center to discuss potential misapplication of her tax refund for the year 2014. Amended Complaint ("AC") ¶ 15. Ms. Barrigas spent nearly 45 minutes on the phone with an IRS agent Jimmy Forsythe. AC ¶ 18. The discussion included Ms. Barrigas's phone number, tax return and refund issues, and details of a repayment plan for tax liability due for 2011 and 2012. AC ¶ 19. Unbeknownst to the plaintiff, IRS Agent Forsythe had been on hold with the Howard Stern Show using another phone line during the call. AC ¶ 23. Stern picked up the Agent Forsythe's call and proceeded to broadcast the discussion between Agent Forsythe and Ms. Barrigas live on satellite radio to millions of listeners. AC ¶ 24.

Stern, after becoming aware that the call Stern was airing was not intended to be broadcast by the IRS Agent and was in the nature of a debt collection matter, allowed the call to continue to air to its millions of listeners. AC ¶ 24-31. During the airing of the call, Ms. Barrigas's personal tax information, the debt she allegedly owed to the IRS, details of the re-

---

[1] Plaintiff concedes that her claim against Stern under 26 U.S.C. § 7431 and 26 U.S.C. § 6103 cannot proceed, as Stern is not one of the possible defendant enumerated in § 6103 (a)(3).
[2] All facts recited herein are taken from the Plaintiff's Amended Complaint and Jury Claim and the Plaintiff's Affidavit filed herewith.

payment plan, and her phone number were broadcast live. AC ¶ 26.  Ms. Barrigas received a barrage (hundreds) of text messages and phone calls from unknown callers/individuals while she was on the phone with the IRS agent and in the hours and days after the call.  AC ¶ 20, 32-33.  Barrigas affidavit ¶ 6.  The calls and text messages continued for many days.  AC ¶ 33.

Ms. Barrigas's phone number was publicly listed.  Her name and residence were easily found by an internet search by inputting her phone number into internet search engines. Barrigas affidavit ¶ 7-8.  Ms. Barrigas was unable to change her phone number in response to the onslaught of calls and text messages because she was in the midst of a job search and her phone number was the main point of contact for prospective employers. Barrigas affidavit ¶ 9.

During the call, Stern stated expressly on the air that the conversation involved a tax collector and was of a personal nature and was not what the caller had intended, reflecting that Stern was definitively aware of the private and sensitive nature of the information being broadcast. AC ¶ 27.  Furthermore, Stern proceeded to joke about the publication and broadcast of the plaintiff's tax debt and collection information and used the broadcast and the humiliation of Ms. Barrigas as a source of amusement for their listeners." AC ¶ 30.

Even today, Ms. Barrigas's phone call with the IRS may be accessed on the internet in and thus continues to be publicly broadcast.  AC ¶ 31.

───────────────

Ms. Barrigas immediately reported the incident to the IRS and the Stern Show and sought to have her private information and phone number removed from any media accessible to the public, only to be ignored by both Stern and the IRS.  AC ¶ 34. Nevertheless, to make matters worse, Stern continued to air the call on its website for many weeks. AC ¶ 39.  When neither Stern nor the IRS responded adequately to her pleas for assistance in removing her personal tax and identifying information from the public domain, Ms. Barrigas contacted the

consumer help line of a local news station and asked them to contact Stern and the IRS. Barrigas affidavit ¶ 11.  It was only then that Ms. Barrigas received any reply from Stern or the IRS.  Barrigas affidavit ¶ 12.  When the news outlet, WCVB-TV asked Ms. Barrigas for a television interview, she initially declined, but when the news reporter came to her home, she agreed only on condition that her name and face be redacted. Barrigas affidavit ¶ 13.

At the time of this incident, Ms. Barrigas was in the midst of a change of employment. She experienced great difficulty finding employment in her field as a result of this incident. AC ¶¶ 45, 46.  Barrigas affidavit ¶ 14-15.  Ms. Barrigas has also sustained severe emotional distress with physical symptomology resulting from this incident.  She has experienced loss of sleep, anxiety, depression, and exacerbation of a physically disabling pain condition and a bladder condition. Barrigas affidavit ¶ 16.

### III.     ARGUMENT

1.      Standard of Review of Motion to Dismiss Pursuant to Rule 12(b)(6)

Rule 12(b)(6) motions test the sufficiency of the pleadings under Rules 8 and 9. The Court should construe the Complaint liberally in the pleader's favor.  *Kaltenbach v. Richards,* 464 F. 3d. 524, 526-27 (5th Cir. 2006).  The Court should presume that all well-pleaded allegations are true, and resolves all doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007); *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).  Although Rule 8 encourages brevity, the complaint must say enough to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  *Tellabs, Inc.,* 127 S. Ct. at 2507.

Although the *Twombly* decision overruled *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) and its more liberal pleading standard, the basic "notice pleading" standard remains the rule in the federal courts. *Johnson v. Riverside Healthcare System, LP,* 534 F. 3d. 1116, 1122 (9th. Cir 2008). The pleading of tediously detailed factual allegations is still not required. *Bell Atlantic Corp.*, 127 S. Ct. at 1964-65.

In this case, Ms. Barrigas has met the "notice pleading' standard under Rule 8 and the *Twombly* decision. As recited, *supra* and in Ms. Barrigas's Complaint, Ms. Barrigas has "said enough" in her complaint to place Stern on notice that she has brought claims for M.G.L. Chapter 214, § 1B violations, Negligence, and Intentional Infliction of Emotional Distress. It is not genuine of Stern to claim that they are not aware or on notice of what Ms. Barrigas's claims are about. See *Tellabs, Inc.,* 127 S. Ct. at 2507.

2.  Invasion of Privacy - M.G.L. Chapter 214, § 1B

Ms. Barrigas's Amended Complaint brings action for Stern's interference with her privacy in violation of M. G.L. c. 214, § 1B by Stern's broadcast of Ms. Barrigas's tax return information, federal income tax debt and repayment plan to millions of listeners, then re-broadcasting it for weeks to millions more via Stern's web site.

The Massachusetts privacy statute, M.G.L. c. 214, § 1B, provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy. There are several elements that a plaintiff such as Ms. Barrigas must prove to establish a claim for violation of this statute, depending on the nature of the intrusion. Specifically, plaintiff must establish that:

- The defendant interfered with the plaintiff's privacy.

- The interference was unreasonable, substantial, or serious.

- The plaintiff has sustained damages as a result of the interference.

The allegations of Ms. Barrigas's Amended Complaint make out a prima facie case under M.G.L. c. 214, § 1B.  Ms. Barrigas alleges that Stern's unauthorized broadcast and subsequent internet publication of her conversation with the IRS about her tax return information and tax debt repayment plan interfered with her privacy.  She further alleges that the broadcast of this private conversation and data was made to millions of people worldwide both live and for weeks after the call, and thus was unreasonable, substantial and serious.  Lastly, Ms. Barrigas alleges she sustained both economic and emotional distress damages as a result. Therefore, the Court should hold that Ms. Barrigas's Amended Complaint is sufficient to place Stern on notice of her claim under M.G.L. c. 214, § 1B and that it satisfies all elements of a claim under that statute.

Stern argues that its broadcast to millions of people of Ms. Barrigas's private call to the IRS was not unreasonable, substantial and serious and that tax information is not the type of intimate details of a highly personal nature. However, Massachusetts cases hold otherwise.

In *Jones v. Taibbi*, 400 Mass. 786, 801–02 (1987), the Massachusetts Supreme Judicial Court stated that disclosure of private facts about an individual is actionable under G.L. c. 214, § 1B.  The court referenced the Restatement (Second) of Torts § 652D (1977), which provides as follows:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that:
>
> (a) would be highly offensive to a reasonable person, and
>
> (b) is not of legitimate concern to the public.

§1B, prohibits 1) a gathering and dissemination of facts of a private nature that 2) resulted in an unreasonable, substantial or serious interference with his privacy." *Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015) (citing *Nelson v. Salem State Coll.*, 446 Mass. 525 (2006). Ms. Barrigas's Amended Complaint, which alleges that Stern broadcast her private tax information, tax debt, financial information, tax debt repayment plan information together with her phone number with which any listener could (and many did) identify her, was unreasonable, substantial and serious. These allegations fit squarely within Massachusetts case law regarding M.G.L. c. 214, § 1B, including *Branyan,* as well as the Restatement (Second) of Torts § 652D (1977).

In its motion, Stern relies heavily on *Attorney General v. Collector of Lynn,* 377 Mass. 151 (1979) as support for the notion that public dissemination of unpaid taxes is not sufficient to meet §1B's requirement of 'unreasonable, substantial or serious interference with privacy.' However, the facts of the *Collector of Lynn* case are much different from the facts of this case. *Collector of Lynn* involved a dissemination of municipal property tax data that <u>was already publicly available</u> via the City's assessor's public records/assessor books. *Collector of Lynn* 377 Mass. at 157-158. In contrast, Stern's broadcast to millions of people of Ms. Barrigas' call to the IRS involved private financial and federal tax debt information that was not available to the public but for Agent Forsythe's unauthorized call to the Stern Show and Stern's unauthorized broadcast of the call and internet posting of it.

The type of financial information publicized in this case is exactly the type of private information contemplated by the Court in *Collector of Lynn* in which one would have an expectation of privacy. Id at 157 (stating that while an owner of property may have some expectation of privacy in real estate tax records, he does not have the same expectation of

privacy concerning his legal obligation as he has <u>in his private financial affairs</u> (emphasis added).

In this case, Ms. Barrigas had a reasonable expectation of privacy in her call to the IRS to discuss her private tax and financial information and tax debt repayment plan. Unlike with the municipal property tax information at issue in the *Collector of Lynn* case which is readily available to the public, Ms. Barrigas had no reason to expect that her call to the IRS might be broadcast live to millions of people worldwide and then again for weeks thereafter. Ms. Barrigas's private tax and financial information and tax debt repayment plan was exactly the type of information of a highly personal nature in which the Court in *Collector of Lynn* held a person has an expectation of privacy. Id at 157.

Additionally, Stern argues that dissemination of Ms. Barrigas's phone number was not a release of the type of private information contemplated as actionable under M.G.L. c. 214, § 1B. However, Stern forgets that it is the coupling of Stern's broadcast of Ms. Barrigas's phone number, with which she was easily identified by hundreds of individuals via a simple internet search, together with her private tax and financial information which was unreasonable. And in fact, a barrage of listeners of the Stern Show did in fact identify Ms. Barrigas and contact her, subjecting her to days and weeks of harassment.

Therefore, the Court should deny Stern's Motion to Dismiss as it relates to Ms. Barrigas's claim under M.G.L. c. 214, § 1B because Ms. Barrigas' Amended Complaint states a prima facie case of unreasonable interference with her privacy. Stern's broadcast to millions of listeners worldwide of Ms. Barrigas's phone number and her private call to the IRS discussing financial, tax and tax debt repayment was a substantial interference with Ms. Barrigas's privacy.

2. <u>Intentional Infliction of Emotional Distress</u>

Ms. Barrigas's Amended Complaint sufficiently states a claim against Stern for the tort of Intentional Infliction of Emotional Distress. The Amended Complaint describes Stern's actions in <u>both</u> broadcasting Ms. Barrigas's private financial and tax return information together with her phone number, <u>and</u> ignoring Ms. Barrigas's pleas for help and to remove the call from any publicly available media, <u>and</u> then continuing to post the call on its web site for weeks thereafter. Stern's actions occurred long after Stern was aware that Ms. Barrigas's phone call to the IRS was intended to be private, was tax and collection related, and was not intended to be broadcasted publicly.

To prevail on a claim for intentional or reckless infliction of emotional distress, the plaintiff must show the following:

- the actor intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his or her conduct;
- the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community";
- the actions of the defendant were the cause of the plaintiff's distress; and
- the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable man could be expected to endure it."

*Agis v. Howard Johnson Co.*, 371 Mass. 140, 144–45 (1976)

Ms. Barrigas's Amended Complaint is sufficient to state a claim for Intentional Infliction of Emotional Distress against Stern.

Stern argues that its conduct in airing Ms. Barrigas's private call to millions of people worldwide was not sufficient to rise to the standard of "extreme and outrageous" necessary for the tort of Intentional Infliction of Emotional Distress. Stern argues that its conduct in "merely" airing three minutes of the call live is insufficient as a matter of law to meet the standard. However, Stern conveniently ignores its own conduct both during the call and after it. Ms. Barrigas's Amended Complaint describes how Stern used the call as a source of amusement for its listeners despite that Stern knew the call was a tax related collection matter and was not intended to be aired or publicized in any way. Then, when Ms. Barrigas desperately appealed to Stern to remove the call from its web site, Stern ignored Ms. Barrigas's pleas, then proceeded to post the call on its web site for weeks.

Stern's conduct as described in Ms. Barrigas's Amended Complaint is sufficient to rise to the level of "extreme and outrageous" contemplated by Massachusetts jurisprudence on this tort. Massachusetts Courts have found a very wide variety of conduct to meet the "extreme and outrageous" standard. For example, in one case, the court found "ample evidence" of outrageous conduct in a landlord's failure to take permanent action to prevent flooding of a tenant's apartment with water and sewage. Although the landlord did send work crews to pump out the water after each flood, the court found that the landlord had displayed a long pattern of indifference that its conduct was outrageous, 'beyond all possible bounds of decency.'" *Simon v. Solomon*, 385 Mass. 91, 97 (1982) (quoting *Agis v. Howard Johnson Co.*, 371 Mass. 140, 145 (1976)). The indifference displayed by the defendant in the *Simon* case is similar to the indifference displayed by Stern during and for weeks after the May 19, 2015 call between Ms. Barrigas and the IRS.

In another case, sufficient facts were found to support a claim for intentional infliction of emotional distress where a defendant company alleged a plaintiff had guaranteed in writing to pay her son's debt, knowing that this was not true; had badgered and harassed the plaintiff with late-night telephone calls, with repeated mailings of bills marked "account referred to law and collection department," and by writing to her that her credit was revoked; and had used "numerous other dunning tactics." *George v. Jordan Marsh Co.*, 359 Mass. 244, 245–46 (1971).

In yet another matter, a defendant neighbors' efforts over the course of years to block the plaintiff from building on her property by "entangling the property in additional and arguably meritless litigation on the eve of its sale" was outrageous conduct sufficient to support a claim for intentional infliction of emotional distress. *Vittands v. Sudduth*, 49 Mass. App. Ct. 401, 411 (2000).

Even an attorney's seemingly negligent action has been found sufficient to rise to the level of "extreme and outrageous."  In *Lingis v. Waisbren*, 20 Mass. L. Rptr. 439 (Super. Ct. Dec. 17, 2006) (MacDonald, J.), *rev'd on other grounds*, 75 Mass. App. Ct. 464 (2009), an attorney's actions in stipulating to dismissal with prejudice of a client's medical malpractice case without her permission, particularly after having failed to engage in any discovery in the case, amounted to "extreme and outrageous" conduct entitling the plaintiff to recovery.  The conduct by Stern in this case in knowingly or recklessly broadcasting the May 19, 2015 call between Ms. Barrigas and the IRS live and for weeks thereafter is far more severe than the defendant attorney's negligent omission type conduct in the *Lingis* case.  Therefore, the Court should deny Stern's Motion to Dismiss as it relates to Ms. Barrigas's Intentional Infliction of Emotional Distress claim because Ms. Barrigas's Complaint on that claim is sufficient to state the claim and to place Stern fairly on notice of it.

It is also important to note that the courts have repeatedly found conduct that, taken alone or as an isolated incident, would not be considered "outrageous" for the purposes of the *Agis* test, may rise to the level of outrageous conduct when the actions are repeated or are part of a larger pattern of offensive conduct. *Boyle v. Wenk*, 378 Mass. 592, 595–96 (1979) (pattern of investigatory tactics outrageous); *George v. Jordan Marsh Co.*, 359 Mass. at 245–46 (pattern of "dunning" debt collection practices found outrageous). In this case, Ms. Barrigas's Amended Complaint alleges that Stern not only aired her private call to the IRS but also ignored her pleas for assistance, and to remove the call from Stern's web site, and that Stern then continued to post the call to its web site for many weeks.

In determining whether the defendant's conduct met the "extreme and outrageous" standard, Massachusetts Courts have also considered the plaintiff's susceptibility to emotional distress. In cases of emotional distress, as in other types of tort claims, the defendant takes the plaintiff as he or she finds him or her. In cases that support a claim of intentional or reckless infliction of emotional distress, the courts have acknowledged the validity of the "eggshell psyche"—that is, if the plaintiff can demonstrate that he or she is particularly susceptible to distress under the circumstances of the case presented, even individual acts that would not ordinarily rise to the level of outrageousness may be grounds for recovery. *See Harrison v. Loyal Protective Ins. Co.*, 379 Mass. at 218; *see also, e.g., Boyle v. Wenk*, 378 Mass. at 596 (fact that defendant knew that plaintiff had just returned home from hospital after giving birth should have put defendant on notice of plaintiff's special vulnerability); *Bailey v. Shriberg*, 31 Mass. App. Ct. 277, 279 (1991) (suggesting that age and frailty of plaintiffs made them particularly susceptible to noise made by neighbor); *Chase v. First Parish Church*, 11 Mass. L. Rptr. 260 (Super. Ct. Feb. 3, 2000) (citing *Boyle v. Wenk* in support of finding against defendant based on defendant's

conduct in pressing deaf plaintiff to recount to Sunday school class painful anecdotes related to plaintiff's experience with prejudice against the deaf). In this case, where Ms. Barrigas had an underlying anxiety condition and a pain and other physical medical conditions susceptible to exacerbation by stress, it is appropriate to consider that Ms. Barrigas's susceptibility to emotional distress in determining whether Stern's conduct rose to the level of "extreme and outrageous" conduct.

In light of all factors and the Massachusetts Courts' treatment of the tort of Intentional Infliction of Emotional Distress, the Court should hold that Ms. Barrigas's Amended Complaint is sufficient to warrant a jury's determination of whether Stern's conduct in broadcasting Ms. Barrigas's private call to the IRS about financial, tax and tax debt repayment to millions of people worldwide, in ignoring Ms. Barrigas's help, and then posting the call on Stern's web site for weeks was "extreme and outrageous".

Stern's motion also fails in its argument that Stern's conduct did not meet the element of "intent" necessary for the tort of Intentional Infliction of Emotional Distress. Stern ignores that the plaintiff must only show that the actor intended to inflict emotional distress, <u>or knew or should have known that emotional distress was the likely result of his or her conduct</u>. The plaintiff is required to show that the defendant either intended to cause the emotional distress suffered by the plaintiff, or that the defendant knew or should have known that such distress would result from his or her conduct. *Agis*, 371 Mass. at 144–45.

Ms. Barrigas's Amended Complaint sufficiently pleads that Stern intended emotional distress and/or knew or should have known that emotional distress was the likely result of Stern's conduct. Ms. Barrigas alleges that Stern was aware during the call at issue that the call was not intended to be public and was in fact of a very private nature. Yet, Stern not only

13

continued to air the call live to millions of listeners, but then proceed both to ignore Ms. Barrigas's pleas for help to minimize the damage and publication. Instead, Stern posted the call on its web site for many weeks. It is for the jury to determine whether Stern's knew or should have known that emotional distress was the likely result of Stern's conduct. *Id.* at 144–45.

Stern's argument that Ms. Barrigas's Amended Complaint is not sufficient to place Stern on notice that Ms. Barrigas suffered severe emotional distress is also without merit. Ms. Barrigas alleges that Stern's conduct resulted in emotional distress that was and is severe and of a nature that no reasonable person could be expected to endure. In fact, Ms. Barrigas experienced severe anxiety, depression, fear, exacerbation of pain and other physical medical conditions, loss of sleep and loss of appetite as a result of Stern's actions.

Massachusetts Courts have repeatedly found that the type of emotional distress symptoms described and alleged by Ms. Barrigas is sufficient to meet the standard of severity necessary for the tort of Intentional Infliction of Emotional Distress. *See, e.g., Agis v. Howard Johnson Co.*, 371 Mass. 140, 141 (1976) (finding that an emotional distress claim was properly substantiated on showing that a plaintiff became "greatly upset, began to cry, sustained emotional distress, mental anguish and loss of wages and earnings" after being arbitrarily fired from her job) *and George v. Jordan Marsh Co.*, 359 Mass. 244, 246 (1971) (holding that sufficient showing of emotional distress was found in testimony that a plaintiff suffered "great mental anguish and emotional distress.") In this case, Ms. Barrigas has alleged sufficient facts to place Stern on fair notice that Ms. Barrigas sustained emotional distress as a result of Stern's conduct which rose to a level of severity necessary for the tort of Intentional Infliction of Emotional Distress.

The Court should deny Stern's Motion to Dismiss as it relates to Ms. Barrigas's claim of Intentional Infliction of Emotional Distress because Ms. Barrigas's Amended Complaint fairly

14

puts Stern on notice of her claim and states sufficient facts to support each element of the tort. Ms. Barrigas has properly alleged that the Stern intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of its conduct; that Stern's the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; that Stern's the actions were the cause of the Ms. Barrigas's distress; and that the emotional distress sustained by Ms. Barrigas was "severe" and of a nature "that no reasonable man could be expected to endure it." *See Agis v. Howard Johnson Co.*, 371 Mass. 140, 144–45 (1976).

3.  <u>Negligence</u>

Ms. Barrigas's Amended Complaint also alleges that Stern was negligent in its actions surrounding and following Ms. Barrigas' private call to the IRS. Under Massachusetts law, negligence consists of four elements:

- a duty,

- a breach of that duty,

- damage to the plaintiff, and

- a causal relationship between the breach of duty by the defendant and the damage claimed by the plaintiff.

*Bennett v. Eagle Brook Country Store*, 408 Mass. 355, 358 (1990).

Ms. Barrigas's Amended Complaint is sufficient to properly place Stern on notice of her negligence claim. Whether a duty of care is owed by a defendant depends on the particular circumstances involved. *Commerce Ins. Co. v. Ultimate Livery Serv., Inc.*, 452 Mass. 639, 646–51 (2008). A duty of care may be owed by employers to third persons for injuries caused by their employees if the employee acted within the scope of employment. *See Wang*

*Labs., Inc. v. Bus. Incentives, Inc.*, 398 Mass. 854, 859 (1986); *Miller v. Federated Dep't Stores, Inc.*, 364 Mass. 340, 350 (1973). For the employee's conduct to be considered within the scope of employment, the conduct must be of the kind the employee was hired to perform, substantially occur within the time and place of the employment, and be motivated by at least a partial intention to further the interests of the employer. *See Worcester Ins. Co. v. Fells Acre Day Sch., Inc.*, 408 Mass. 393, 405 (1990).

In this case, Ms. Barrigas alleges that Stern airs a popular satellite radio talk show which is broadcast to millions of listeners, and a web site that is viewed by millions. Ms. Barrigas's Amended Complaint alleges that Stern owes a duty to refrain from publicizing what it knows or should know to be very private tax and financial information of private individuals. Stern owes a duty of care to third parties such as Ms. Barrigas for injuries caused by Stern's employees in the course of their duties. In this case, Ms. Barrigas alleges that Stern and its employees aired her call both live and for weeks after the call after knowing or after they reasonably should have known that the call was private and was of a personal, financial, tax and tax debt collection nature. The Court should find that Ms. Barrigas's Amended Complaint fairly places Stern on notice of Ms. Barrigas's allegations that Stern owes a duty of care under these circumstances.

Ms. Barrigas's Amended Complaint also sufficiently alleges that Stern breached its duty of care. The standard of care is the degree of care that a reasonably prudent person in a similar situation would take. Negligence is a deviation from that standard. The duty is to be careful and refrain from acts that may unreasonably expose another to a risk of harm. *Yakubowicz v. Paramount Pictures Corp.*, 404 Mass. 624, 629 (1989). When a legal duty of care is owed, it is to exercise ordinary prudence and care commensurate with the risk involved. *Gelinas v. New Eng. Power Co.*, 359 Mass. 119, 124 (1971).

Ms. Barrigas alleges in her Amended Complaint that Stern show was not responsive to Ms. Barrigas's calls, and continued to air the call on its web site for many weeks after the incident. Such carelessness is more than sufficient to properly notify Stern of a claim for breach of a duty of care.

The Court should deny Stern's Motion to Dismiss as it relates to Ms. Barrigas's claim of negligence because Ms. Barrigas's Amended Complaint fairly places Stern on notice that Stern owed a duty of care. Breached the duty of care, and that the breach caused Ms. Barrigas injury in the form of severe emotional distress.

## IV. CONCLUSION

WHEREFORE, the plaintiff respectfully seeks that the Court DENY Stern's Motion to Dismiss under Rule 12(b)(6) because Ms. Barrigas's Amended Complaint is sufficient to properly give Stern fair notice of the plaintiff's claims of interference with her rights of privacy under M.G.L. Chapter 214, § 1B, of Intentional Infliction of Emotional Distress, and of Negligence.

Respectfully submitted,
For the plaintiff,


/s/ Sol J. Cohen
Sol J. Cohen
BBO # 630776
COHEN & SALES, LLC
275 Grove Street, Suite 2-400
Newton, MA 02466
Phone: (617) 621-1151
e-mail: soljcohen@cohenandsales.com

## CERTIFICATE OF SERVICE

  I, Sol J. Cohen, attorney for the plaintiff, hereby certify that on this 1st day of August, 2017, I served a copy of the above document on all attorneys of record in this action via the federal court electronic filing system.


              /s/  Sol J. Cohen
              Sol J. Cohen